**N.A.A.C.P., DETROIT BRANCH, The Guardians, Inc., Brady Bruenton, Cynthia Martin, Hilton Napoleon, Sharron Randolph, Betty T. Roland, Grant Battle, Cynthia Cheatom, Evin Fobbs, John Hawkins, Helen Poellinitz, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**DETROIT POLICE OFFICERS ASSOCIATION, (D.P.O.A.), David Watroba, President of the D.P.O.A., City of Detroit, a Michigan Municipal Corporation, Mayor Coleman A. Young, Detroit Police Department, Board of Police Commissioners, Chief William Hart, Governor William Milliken, and the Michigan Employment Relations Commission, Defendants.**

Civ. A. No. 80 73693.

United States District Court,
E. D. Michigan, S. D.

Nov. 17, 1981.

Thomas Adkins, New York City, Jeanne Mirer, Duane Elston, Detroit, Mich., for plaintiffs.

Walter S. Nussbaum, Ingrid M. Farquharson, Southfield, Mich., for defendants D.P.O.A. and Watroba.

Michael Lockman, Detroit, Mich., for defendants Governor William G. Milliken and MERC.

James Zeman, Detroit, Mich., for defendant City of Detroit.

## OPINION

GILMORE, District Judge.

The controversy in this case can be briefly summarized. In October 1979 and September 1980, the City of Detroit laid off

approximately 1100 police officers pursuant to the terms of the last hired/first fired seniority provision contained in Article 10, § E of the 1977–1980 Collective Bargaining Agreement between the City and the Detroit Police Officers Association ('DPOA'). Of the 1100 officers laid off, approximately 800 were black.

On September 30, 1980, several individual laid-off black police officers and two organizations, the Guardians, a voluntary organization of black police officers, and the NAACP, whose membership includes laid-off black officers, brought this action challenging the layoffs under the 13th and 14th Amendments to the United States Constitution, 42 U.S.C. 1981, 1983, 1985(3), Title VI of the Civil Rights Act of 1964, and Michigan law. Plaintiffs' claim rests on the findings in *Baker v. City of Detroit*, 483 F.Supp. 930 (E.D.Mich.1979)[1] in which Judge Keith upheld the City of Detroit's voluntary affirmative action plan as necessary to offset the effects of past discrimination in the Detroit Police Department. Plaintiffs argue that the finding of a constitutional violation in *Baker* imposed an affirmative obligation on the City of Detroit to dismantle and eliminate all effects of these discriminatory policies. They contend that the seniority-based layoffs are constitutionally and statutorily impermissible because they have a discriminatory impact on blacks and operate to revive and reinstitute the effects of Detroit's past illegal hiring practices. The individual plaintiffs also claim that their union, defendant DPOA, breached its duty of fair representation with regard to the layoffs.

The case is currently before the Court on two motions. Defendants DPOA and David Watroba, President of the DPOA, have filed a motion for summary judgment arguing that plaintiffs have failed to state a legally sufficient claim, and that defendants are entitled to judgment as a matter of law under all counts of the complaint. In addition, defendant DPOA challenges the

standing of the two organizational plaintiffs, NAACP and the Guardians. Finally, the DPOA requests that, if summary judgment is granted in their favor, the Court bifurcate the case into liability and remedy stages, and they be permitted to intervene at the remedy stage.

Plaintiffs have moved for partial summary judgment. They argue that the doctrine of collateral estoppel precludes relitigation of the issue of the City's past intentional discrimination as found in *Baker v. City of Detroit, supra*. Further, plaintiffs contend that, in light of *Baker*, the City was under a continuing duty to remedy the effects of prior unconstitutional hiring policies.

## I. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. *Standing*

The first issue raised by defendants DPOA and Watroba in their motion for summary judgment is whether the two organizational plaintiffs—the NAACP and the Guardians—have standing to sue. The defendants contend that the Court's certification of a class of black police officers precludes the participation of the associations as representatives of their members because the claims asserted and the relief requested make the involvement of the individual officers indispensable to a proper resolution of the case.

There is no question that an association may obtain standing to sue in different capacities. It has standing on its own behalf to seek relief from injury to itself, and it also may have standing solely as the representative of its members, even in the absence of injury to itself. *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977).

In order to obtain standing as a representative of its members, an association must meet certain prerequisites. In *Warth*, the Supreme Court held:

---

1. *Baker* is presently on appeal but has not yet been decided by the United States Court of Appeals for the Sixth Circuit.

The association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit. . . . So long as this can be established, and so long as the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause, the association may be ,an appropriate representative of its members. . . . " 422 U.S. at 511, 95 S.Ct. at 2211.

Defendants argue that the organizational plaintiffs' effort to acquire standing in their representative capacity must fail because the relief sought includes reinstatement and back pay. Since this relief would only benefit the individual class members, defendants assert that the organizational plaintiffs have failed to meet the requirements of *Warth*.

■ The Court does not agree. First, the defendants have mistakenly interpreted the Guardians' posture as that of a representative of its members. The Guardians is a voluntary association of black police officers. It has alleged that it has suffered diminished financial support and loss of membership as a result of the challenged layoffs. These losses clearly affect its ability to function as an effective organization within the police department. In short, Guardians has alleged a distinct injury to itself. These allegations of injury to itself, as an association, are sufficient to establish standing. *See Warth, supra*. Thus, the Court need not inquire into whether the association has met the requirements for representational standing. Clearly the Guardians has established sufficient standing.

■ The second organizational plaintiff, NAACP, seeks standing as a representative of its members. Thus, it may obtain standing only if "neither the claim asserted, nor

the relief requested, requires the participation of individual members in the lawsuit." *Hunt, supra*, 432 U.S., at 343, 97 S.Ct. at 2441. In determining whether an action requires the participation of individual members, the Supreme Court has been primarily concerned with the problems of individualized proof. In *Hunt, supra*, the Court upheld the association's right to sue on behalf of its members after finding that "neither the interstate commerce claim nor the request for declaratory and injunctive relief requires individualized proof and both are thus properly resolved in a group context." 432 U.S. at 344, 97 S.Ct. at 2441.

■ The instant case is primarily one for injunctive relief which will not require individualized proof. Plaintiffs' prayer for relief states, in pertinent part:

"2. That this Court enjoin the operation of the seniority provisions of the Collective Bargaining Agreement between the City and the DPOA to the extent that the agreement would prevent the City from meeting its affirmative obligation to correct its constitutional violations;

3. That this Court enjoin the DPOA from obstructing the City in its remediation efforts;

4. That this Court order defendants City and Police Department to reinstate all minority officers who were illegally laid off as a result of the strict adherence to the seniority system;

5. That the defendants pay the reinstated officers their back pay with interest."

The central issue is whether this Court has the power to alter the effects of an allegedly racially neutral seniority system and compel the layoff of employees in a manner that does not jeopardize the racial balance achieved through a voluntary affirmative action program.[2] The issue of back pay, should it arise, simply requires a mechanical, mathematical computation. Such computations may be performed after liability is established. *Cf. Senter v. General Motors Corp.*, 532 F.2d 511 (6th Cir. 1976).

---

**2.** It should be noted that the final order entered by Judge Keith requires the defendant City of

Detroit to continue its affirmative action program within the Police Department.

Since the plaintiffs have requested predominately injunctive relief, and since the basic liability issues can be appropriately resolved in a group context, the participation of the individual members of the NAACP is not indispensable to a proper resolution of this case. Thus, the NAACP has standing to assert the claims of its members.

Therefore, for the reasons given above, the defendants' motion for summary judgment as to the standing of the NAACP and the Guardians is denied.

### B. Plaintiffs' Duty of Fair Representation Claim

Plaintiffs' principal claim against defendant DPOA is that the Union breached its duty of fair representation under State law by discriminating against its black members. Plaintiffs argue that the DPOA discriminated against its black members by insisting on enforcing, and refusing to consider alternatives to enforcing, the seniority-based layoff system, knowing that this would perpetuate the effects of past hiring discrimination.[3] Defendant DPOA has moved for summary judgment, arguing that it cannot be liable because it did not act in an arbitrary manner, and that the layoffs in the instant case took place pursuant to a properly negotiated color-blind collective bargaining agreement.

■ It is clear that the DPOA, as the exclusive bargaining agent for the police, has a duty of fair representation under Michigan law. *See Lowe v. Hotel Employees' Union, Local 705*, 389 Mich. 123, 205 N.W.2d 167 (1973); *Steele v. Louisville & Nashville R.R. Co.*, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944). This case raises novel questions concerning that duty.

■■ The duty of fair representation is breached when a union's conduct towards a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith. *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Thus the duty of fair representation insures that the interests of

individual members and specific groups within the union are protected. *See Steele v. Louisville and Nashville R.R. Co., supra.*

Plaintiffs assert that this duty requires the Union to affirmatively protect (or at least to attempt to protect) their minority members from disproportionate layoffs through a "last hired-first fired" seniority system, even if the system is considered bona fide under Title VII of the Civil Rights Act of 1964. 42 U.S.C. 2000e. They claim that the DPOA's history and conduct with respect to these layoffs amounts to discrimination along "irrelevant and invidious" lines in violation of the duty of fair representation as defined in *Steele, supra.* Plaintiffs contend that the DPOA's refusal to make concessions to avert layoffs, coupled with the DPOA's consistent opposition to affirmative action establishes a prima facie case of racial discrimination against blacks. *See Brown v. Neeb*, 644 F.2d 551, 564 n. 25 (6th Cir. 1981).

Plaintiffs point to several exhibits which they believe evidence the DPOA's discriminatory intent in violation of the duty of fair representation. They point, for example, to exhibit 2 of plaintiffs' complaint, which is a letter dated September 2, 1980, from the Guardians to Defendant Watroba. In this letter, the Guardians urged the DPOA to accept Mayor Young's offer to discuss other options in order to avoid the layoffs. Plaintiffs assert that the DPOA never responded to this letter and in fact had no intention of bargaining in good faith to avert the layoffs. They suggest that the DPOA was motivated to accept the layoffs in order to reduce black voting strength within the union.

Plaintiffs also contend that the DPOA's behavior regarding subsequent layoffs is evidence of the union's intent to discriminate in violation of the duty of fair representation. Specifically, in June 1981, when faced with proposed layoffs that were not as disproportionately black as the 1979–1980 layoffs, the DPOA agreed to a wage freeze

---

**3.** See discussion *infra* where the City of Detroit has admitted past hiring discrimination against blacks in the Police Department.

in order to avert the layoffs, and arranged for an advisory vote in the union on the acceptability of this concession.

Defendant DPOA raises two basic arguments. It claims, first, that its conduct in agreeing to and maintaining a bona fide seniority system does not violate Title VII but, indeed, is mandated by Title VII. Thus DPOA says its conduct regarding layoffs cannot violate the duty of fair representation. Second, DPOA maintains that, if it accepted plaintiffs' proposal, it would be sacrificing contract rights of the majority of its members in favor of a minority in the membership, thus violating its duty of fair representation to the majority members.

Defendant maintains that plaintiffs have alleged no facts which, if true, would show that defendants intentionally discriminated against its black members in violation of the duty of fair representation. Defendant argues that the union may agree to terms of a contract which affects individuals differently so long as the union treats the members in a nondiscriminatory, nonarbitrary fashion. The DPOA insists that it has always acted in good faith.

■ Although the defendant contends that there are no facts indicating that it acted in an arbitrary or discriminatory manner, the Court feels that plaintiffs have produced several exhibits which raise questions of fact concerning the union's behavior.

It appears to the Court that the issue in the instant case is one of first impression, and that plaintiffs have raised sufficient factual claims and issues to preclude the granting of summary judgment at this time. The Court is not currently deciding whether § 703(h) of Title VII of the 1964 Civil Rights Act, 42 U.S.C. 2000e–2(h), which insulates bona fide seniority provisions from attack under Title VII, has any impact on the union's duty of fair representation. Such a decision could not properly be made until the development of a full factual record. Defendant's motion for summary judgment on plaintiffs' claim of a breach of the duty of fair representation is therefore denied without prejudice pending the development of a complete factual record.

C. *Plaintiffs' claim under the 13th and 14th Amendments to the U. S. Constitution, 42 U.S.C. 1981, 1983, 1985(3) and Title VI of the Civil Rights Act of 1964.*

■ Defendants have moved for summary judgment on the ground that plaintiffs have failed to state legally sufficient claims under the 13th and 14th Amendments, 42 U.S.C. 1981, 1983, 1985(3) and Title VI of the Civil Rights Act of 1964. It is clear that a legal summary judgment is not proper at this time. Judgment on the issues raised in this motion must be deferred until a more complete factual record is developed.

## II. PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs' motion for partial summary judgment requests that the Court grant the following declaratory relief:

"That in the light of *Baker v. City of Detroit*, 483 F.Supp. 930 (E.D.Mich.1979), the City of Detroit has violated the Constitutional rights of blacks and therefore has an affirmative obligation to completely dismantle all aspects of the Detroit Police Department's intentionally discriminatory hiring policies, and eliminate all the effects of those policies." (Plaintiffs' brief, p. 1).

Plaintiffs maintain that the doctrines of collateral estoppel and *stare decisis* preclude relitigation of the issue of the City's past intentional discrimination as found in *Baker, supra.*

Defendant City of Detroit does not oppose plaintiffs' motion. In fact, the City openly admits the history of past discrimination found in *Baker*. Defendants DPOA and Watroba oppose plaintiffs' motion on several grounds. They argue they cannot be collaterally estopped by *Baker* because they were not parties to the litigation in *Baker*. They also claim that *Baker* cannot operate as collateral estoppel because the case is currently on appeal, and they con-

tend that the findings in *Baker* were findings of "mediate" fact which cannot be the subject of collateral estoppel. Finally, defendants maintain that *Baker* had several alternative holdings and therefore cannot be given estoppel effect.

The threshold issue is whether collateral estoppel can be used at all since defendants DPOA and Watroba, as well as defendants Milliken and the Michigan Employment Relations Commission, were not parties to the *Baker* litigation. The defendants argue that due process prohibits the use of collateral estoppel against those who were not parties to the prior action, and rely upon *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), where the Court stated:

"Some litigants—those who never appeared in a prior action—may not be collaterally estopped without litigating the issue. They have never had a chance to present their evidence and arguments on the claim. Due process prohibits estopping them despite one or more existing adjudications of the identical issue which stands squarely against their position." 402 U.S. at 329, 91 S.Ct. at 1443.

On the other hand, plaintiffs have cited several cases in support of the proposition that collateral estoppel can be applied without abridging the due process rights of the DPOA and other defendants who were not parties in *Baker*. For example, in *Bradley v. Milliken*, 484 F.2d 215 (6th Cir. 1973), rev'd on other grounds, *Milliken v. Bradley*, 418 U.S. 717, 94 S.Ct. 3112, 41 L.Ed.2d 1069 (1974), the District Court found that the City of Detroit had a *de jure* segregated public school system and ordered cross-district bussing involving 53 other school districts. On review, the Sixth Circuit ruled that the nonparty school districts had a right to be heard. However, the Court stated: "[T]he District Court will not be required to receive any additional evidence as to the matters contained in its Ruling on

the Issue of Segregation..." 484 F.2d at 252[4]. *Accord, United States v. Board of School Commissioners*, 503 F.2d 68 (7th Cir. 1974). Thus, in effect, the new parties were estopped from relitigating the issue of *de jure* segregation with regard to the Detroit School System. The new defendants could only present evidence on the issue of their own culpability.

DPOA's position with respect to the relief requested by plaintiffs is analogous to the situation found in the above cited school desegregation cases. The *Baker* court found that the City of Detroit was guilty of intentional discrimination in violation of the 14th Amendment through at least 1967–68, and of discrimination in violation of Title VII until 1974. Plaintiffs' motion asks this Court to accept these findings for the purpose of the present action. The City of Detroit concedes that it discriminated as found in *Baker*. The issue raised in the present case is whether, and to what extent, the City had a duty to remedy the effects of those discriminatory processes.

 A finding that *Baker* acts as collateral estoppel is relevant only to the City's liability. It says nothing about whether DPOA is guilty of violating plaintiffs' rights. To hold that *Baker* estops this Court from relitigating the question of the City's past discriminatory practices does not deprive the DPOA of its due process rights. Plaintiffs' complaint against the DPOA argues that the DPOA had a duty to remedy the past discrimination practiced by the City. In order to establish the DPOA's liability, plaintiffs will have to produce evidence regarding the DPOA's knowledge, behavior, and participation in the challenged layoffs. Thus, use of collateral estoppel is appropriate here, assuming the requirements for the application of the doctrine are met, because the parties will only be estopped from relitigating the finding of past discrimination by the City of Detroit, —a fact which has been admitted.

---

4. Defendant DPOA argues that *Bradley* is distinguishable because the Court noted that the school districts were instrumentalities of the State, which was a party in the original case.

However, the Court's statement that the local districts were instrumentalities of the state referred to the districts' ability to be sued as parties defendant.

Under the doctrine of collateral estoppel, "the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979). The *Baker* decision must be examined to determine whether it actually and necessarily held, as plaintiffs claim, that the City was guilty of race discrimination in violation of Title VII and the 14th Amendment.

In *Baker*, several white police officers brought suit challenging the City's affirmative action promotion plan under Titles VI & VII of the Civil Rights Act of 1964, and 42 U.S.C. §§ 1981 and 1983. The Court held that the City was in violation of Title VII from 1972 to 1974 because it used discriminatory tests in granting promotions. In order to determine whether the race-conscious affirmative action plan was constitutional, the Court subjected the plan to strict scrutiny under the 14th Amendment and held that the City was guilty of intentional discrimination from 1967 to 1968 in its use of hiring tests and the use of subjective criteria in hiring. The Court also found that statistical evidence proved the existence of race discrimination. It upheld the race-conscious promotion plan on the basis that the City had a duty to remedy the effects of its past discrimination. Thus, the finding of past discrimination in hiring, which is relevant to the present case, was an actual and necessary holding in *Baker.*

██ Defendant DPOA argues *Baker* cannot operate as collateral estoppel because the case had several alternative holdings. However, the alternative holdings in *Baker* are independently sufficient to support the judgment. Thus, collateral estoppel may be used in a subsequent action. *See Winters v. Lavine*, 574 F.2d 46 (2d Cir. 1978).

██ Defendant DPOA also contends that *Baker* cannot estop this Court because it is on appeal and therefore is not a final judgment. However, a judgment is final for purposes of res judicata and collateral estoppel if it makes a "currently effective disposition of the issues raised." *Overseas Motors, Inc. v. Import Motors Limited, Inc.,* 375 F.Supp. 499, 517 (E.D.Mich.1974). Thus, the pending appeal in *Baker* has no effect on the application of collateral estoppel in the instant case.

Finally, DPOA argues that the relevant findings in *Baker* were findings of "mediate" fact which cannot operate as collateral estoppel, citing *Overseas Motors, Inc. v. Import Motors Limited, Inc.,* 375 F.Supp. 499 (E.D.Mich.1974) in support of its argument. Defendants' reliance on this case is misplaced. The Court in *Overseas Motors* expressly noted that the use of the "mediate fact—ultimate fact" distinction had "little support in policy or logic." *Id.* at 523. The reason behind such a restriction on collateral estoppel is to prevent the use of prior determinations to support unforeseeable inferences in the subsequent litigation. Clearly, the problem of unforeseeable inferences discussed in *Overseas Motors* has no bearing on the instant case.

██ For the reasons given above, the doctrine of collateral estoppel precludes relitigation of the issue of the City's past intentional discrimination as found in *Baker.* However, the Court, at this stage of the proceedings, will not make the ultimate finding requested by plaintiffs as to whether the City has "an affirmative obligation to completely dismantle all aspects of the Detroit Police Department's intentionally discriminatory hiring policies, and eliminate all the effects of these policies." The finding of collateral estoppel on the issue of past racial discrimination by the City does not require the Court to go that far. The determination of whether such a finding will be made on that issue must await the development of a full factual record. Thus, plaintiffs' motion for partial summary judgment is granted in part. Orders in conformity with this opinion may be presented.