572 F.Supp. 1168 (1983)
Emanuel RICHARDS, Jr., Edward S. Jordan, William Arrington, Elmer Owens, Clarence Rivers, Fannie Beckles, Bennie McCall, and Minority Correction Officers Assoc., Inc., individually and as representative of all others similarly situated, Plaintiffs,
v.
NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES, Thomas A. Coughlin, III, Individually and as Commissioner of the New York State Department of Correctional Services, John Cassidy, Individually and as Director of the Bureau of Labor Relations of the Department of Correctional Services, and Meyer Frucher, Individually and as Director of the Office of Employee Relations, New York State Executive Department, Defendants.
No. 82 Civ. 626 (GLG).
United States District Court, S.D. New York.
October 7, 1983.
*1169 *1170 *1171 Lawrence S. Cumberbatch, New York City, for plaintiffs; Howard G. Lane, New York City, of counsel.
Robert David Goodstein, New Rochelle, N.Y., Successor Atty. for plaintiffs.
*1172 Robert Abrams, Atty. Gen. of the State of N.Y., New York City, for defendants; Stephen M. Jacoby, Asst. Atty. Gen., New York City, of counsel.

OPINION
GOETTEL, District Judge:
This employment discrimination action is brought by several present and former correction officers and the Minority Correction Officers Association ("MCOA") against the New York State Department of Correctional Services (the "Department"), Thomas A. Coughlin, III, Commissioner of the Department, John Cassidy, Director of the Bureau of Labor Relations of the Department (the "Bureau"), and Meyer Frucher, Director of the Office of Employee Relations, New York State Executive Department (the "Office of Employee Relations"). The plaintiffs allege that the defendants have discriminated against them on the basis of race in violation of 42 U.S.C. §§ 1981, 1983, 1985, 2000d (1976 & Supp. V 1981) ("Title VI"), N.Y. Const. arts. I & II, and N.Y.Civ. Rights Law §§ 8, 12 (McKinney 1976). Stated generally, the plaintiffs' allegations are that the defendants have illegally discriminated in the evaluation, promotion, disciplining, and termination of black correction officers who work for the Department. Jurisdiction is invoked under 28 U.S.C. § 1343 (1976).
The defendants now move to dismiss under Fed.R.Civ.P. 12(b) on the following grounds: (1) that the Court lacks jurisdiction over the Department because it is immune from suit; (2) that the Court lacks personal jurisdiction over certain defendants who were not properly served; (3) that for certain of their causes of action the plaintiffs have failed to state a claim for which relief can be granted; (4) that the plaintiffs' claims are barred by the statute of limitations; (5) that plaintiff MCOA lacks standing in both its individual and representative capacities; and (6) that the Court lacks jurisdiction to hear the various pendent state claims. The Court will consider each of these claims separately.

1. Immunity of the Department to Suit by These Defendants

The defendants challenge the Court's jurisdiction over the Department, arguing that it is an agency of a state government and therefore not amenable to suit under the Civil Rights Act (the "Act"). We agree. A state and its agencies are not "persons" under 28 U.S.C. §§ 1981, 1983, and 1985 and, therefore, are not subject to suit under the Act.[1]See Allah v. Commissioner of Department of Correctional Services, 448 F.Supp. 1123, 1125 (N.D.N.Y.1978); Percy v. Brennan, 384 F.Supp. 800, 809 (S.D.N.Y.1974); Thompson v. New York, 487 F.Supp. 212, 218 (W.D.N.Y.1979).[2] This is true whether the relief being sought is legal or equitable. City of Kenosha v. Bruno, 412 U.S. 507, 511-13, 93 S.Ct. 2222, 2225-27, 37 L.Ed.2d 109 (1973); Diaz v. Ward, 437 F.Supp. 678, 688 (S.D.N.Y.1977), appeal dismissed, 652 F.2d 53 (2d Cir.1981). Thus, because the Department is an agency of the state, it is not a "person" within the meaning of the Act and not a proper party defendant in this action.
Accordingly, the defendants' motion to dismiss the Department for lack of jurisdiction must be granted.

2. Insufficiency of Service of Process

Defendants John Cassidy and Meyer Frucher assert that they have not been properly served in either their individual or official capacities. Rule 4(d)(1) of the Federal *1173 Rules of Civil Procedure, which governs in this case,[3] provides that personal service shall be made
[u]pon an individual other than an infant or an incompetent person, by delivering a copy of the summons and of the complaint to him personally or by leaving copies thereof at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.
Fed.R.Civ.P. 4(d)(1).
In the case of John Cassidy, the Director of the Bureau, the plaintiffs apparently attempted to serve him through Arthur W. Fowler, Jr., the Assistant Director under Cassidy. Fowler maintains that when the process server, Susan Stranahan, sought to serve Cassidy at the Bureau, she was informed that Cassidy was not in and that Fowler was in charge. Rather than try to serve Cassidy at a later date, she told Fowler she could serve him instead, proceeded to hand him the summons and complaint, and left before he had an opportunity to examine the papers. Affidavit of Arthur W. Fowler, Jr. ¶ 4.
This attempt to serve Cassidy was ineffective, however, because personal service of a summons to a party through a co-employee does not constitute sufficient service unless the co-employee is the agent of the party to be served. See Lavender-Cabellero v. Department of Consumer Affairs, 458 F.Supp. 213, 216 (S.D.N.Y.1978). This is true even if, as was the case here, the summons shortly thereafter comes into the possession of the party to be served. McDonald v. Ames Supply Co., 22 N.Y.2d 111, 114-15, 238 N.E.2d 726, 728, 291 N.Y. S.2d 328, 331 (1968). To demonstrate an agency relationship, something more than mere acceptance of service by a purported agent must be shown, 2 J. Moore, J. Lucas, H. Fink & C. Thompson, Moore's Federal Practice ¶ 4.12 (2d ed. 1982), C. Wright & A. Miller, Federal Practice and Procedure § 1097 at 371 (1969); yet, there is nothing more in the record to suggest that such an agency relationship existed between Fowler and Cassidy. Therefore, the Court finds that the plaintiffs have failed to serve Cassidy properly in either his official or individual capacity.
In the case of Meyer Frucher, the Director of the Office of Employee Relations, the attempted service through a third person was more successful. Walter J. Pellegrini, then counsel to the Director of Employee Relations, accepted the service of process for Frucher because, as Pellegrini stated, "[c]ounsel was authorized and would accept service of summons addressed for the Director of that Office as agent for the Director." Affidavit of Walter J. Pellegrini ¶ 4. This statement clearly describes an agency relationship such that Frucher in his official capacity was properly served through Pellegrini. The record does not establish, however, that Pellegrini was authorized to accept service on behalf of Frucher in his individual capacity. Absent evidence of such authority, we must conclude that Frucher has been properly served only in his official capacity.
Accordingly, the defendants' motion to dismiss for insufficiency of service is granted in full with respect to Cassidy and in part with respect to Frucher.[4] In both instances, *1174 however, the Court grants the plaintiffs thirty (30) days leave to reserve the defendants. See Fed.R.Civ.P. 4(h).

3. Adequacy of Claims Under the Civil Rights Act (the "Act")

The defendants also move to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that each of plaintiffs' causes of action under the Act, 42 U.S.C. §§ 1981, 1983, 1985, and 2000d (1976 & Supp. V 1981), rests on vague and conclusory allegations that are insufficient to state a legal claim. In considering this argument, the Court must accept all material allegations in the amended complaint as true and construe them liberally in favor of the plaintiffs.[5]Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1973); Gutierrez v. Vergari, 499 F.Supp. 1040, 1046 (S.D.N.Y. 1980). The general rule is that a complaint should be dismissed only if it appears that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957). The Second Circuit, however, has noted that a plaintiff bringing claims under the Civil Rights Act must include in the complaint some allegations of fact indicating a deprivation of civil rights. See Koch v. Yunich, 533 F.2d 80, 85-86 (2d Cir.1976); Fine v. City of New York, 529 F.2d 70, 73 (2d Cir.1975); Powell v. Jarvis, 460 F.2d 551, 553 (2d Cir.1972). Applying this criterion to the instant action, we conclude that the plaintiffs have failed to allege facts sufficient to state a claim under either section 1985 or Title VI.[6]

a. 42 U.S.C. § 1985

A complaint alleging a conspiracy under section 1985 must "set forth with certainty facts showing particularly what a defendant or defendants did to carry the conspiracy into effect, whether such acts fit within the framework of the conspiracy alleged, and whether such acts, in the ordinary course of events, would proximately cause injury to the plaintiff." Martin Hodas, East Coast Cinematics, Inc. v. Lindsay, 431 F.Supp. 637, 643-44 (S.D.N.Y.1977) (quoting Hoffman v. Halden, 268 F.2d 280, 295 (9th Cir.1959)). In the instant case, however, the amended complaint fails to meet these requirements. It contains nothing more than generalized, unsupported allegations and simple conclusions, which do not describe the parameters of a conspiracy.[7]See Morpurgo v. Board of Higher Education, 423 F.Supp. 704, 711 (S.D.N.Y. 1976) (dismissing section 1985 claim because *1175 plaintiff's vague, conclusory, and imprecise allegations failed to provide defendants with fair notice of the charges against them). No facts are alleged from which a reasonable inference of conspiracy could be drawn. Indeed, the word "conspiracy" is not even mentioned. Thus, although the plaintiffs are correct in their statement that section 1985 is designed to protect against conspirators' actions that are motivated by a "class-based, invidiously discriminatory animus," the plaintiffs have not alleged the essential elements of a section 1985 conspiracy. See Rios v. Marshall, 530 F.Supp. 351, 362 (S.D.N.Y.1981).
There is an additional ground for dismissing the plaintiffs' section 1985 claim. It is not a claim that is distinct from one that could be raised under Title VII, 42 U.S.C. § 2000e (1976). See Great American Federal Savings & Loan Association v. Novotny, 442 U.S. 366, 378, 99 S.Ct. 2345, 2352, 60 L.Ed.2d 957 (1979) (section 1985 may not be invoked to redress violations covered by Title VII). As such, it should be raised under Title VII, and not under section 1985.
Thus, plaintiffs' section 1985 claim is dismissed on two independent grounds: first, the vagueness of the underlying allegations; and second, the inapplicability of section 1985 to a claim more appropriately brought under Title VII.

b. 42 U.S.C. § 2000d (Title VI)

In actions alleging discriminatory employment practices, the threshold requirement for recovery under Title VI is that the employer be a recipient of federal funds that are aimed primarily at providing employment. See Association Against Discrimination v. City of Bridgeport, 647 F.2d 256, 276 (2d Cir.1981), cert. denied, 455 U.S. 988, 102 S.Ct. 1611, 71 L.Ed.2d 847 (1982). Due to the limited facts stated by plaintiffs with regard to their Title VI claim, this Court is unable to determine whether plaintiffs have stated a claim that satisfies this requirement. The amended complaint merely alleges that the defendants have violated Title VI by reason of their use of federal financial assistance in connection with their employment policies and procedures. Amended Complaint ¶ 72. It is important to note that plaintiffs fail to state that the primary objective of the federal financial assistance received by the Department was to provide employment. Moreover, the plaintiffs have not indicated when the Department received such funds and how it used them. Faced with these circumstances, courts have not hesitated to dismiss for failure to state an essential element of the claim. See Sabol v. Board of Education, 510 F.Supp. 892, 896 (D.N.J. 1981); Clark v. Louisa County School Board, 472 F.Supp. 321, 323 (E.D.Va.1979). Thus, we dismiss this claim, with leave to replead.

4. Sufficiency and Timeliness of Claims under Sections 1981 and 1983

Because the claims brought under sections 1981 and 1983 appear, at first blush, to have more substance than the claims just discussed, the Court feels compelled to examine separately the allegations of each named plaintiff to determine the sufficiency of his or her claim. As a group, the plaintiffs allege that the defendants, acting under color of state law, unlawfully injured the plaintiffs by intentionally encouraging and affirming the use of a racially-biased disciplinary system. More specifically, the plaintiffs claim: (1) that black correction officers have received a disproportionate number of counseling memoranda per person than have white correction officers; (2) that the counseling memoranda given to black correction officers are more likely to lead to Notices of Discipline than are the counseling memoranda given to white correction officers; (3) that charges against black correction officers are more likely to be sustained than are similar charges against white correction officers; and (4) that black correction officers receive disproportionately more severe penalties and harsher settlements of grievances. Amended Complaint ¶¶ 53-57. Each named plaintiff alleges having been subjected to one or more of these discriminatory acts, the specifics of which are spelled out in the discussion *1176 that follows. The defendants counter that none of the plaintiffs alleges facts sufficient to state a legal claim that is timely.
This response requires the Court to determine which statute of limitations is applicable to the claims in question. The Civil Rights Act does not contain its own statute of limitations, and, therefore, the period to be applied must be drawn from the most appropriate state statute. Board of Regents v. Tomanio, 446 U.S. 478, 483-84, 100 S.Ct. 1790, 1794-95, 64 L.Ed.2d 440 (1980); Johnson v. Railway Express Agency, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975); Kaiser v. Cahn, 510 F.2d 282, 284 (2d Cir.1974). It is well established in this Circuit that the proper statute of limitations to be applied in a federal civil rights case is the three-year period provided by section 214(2) of the New York Civil Practice Law and Rules, which applies to liability created or imposed by statute. See Pauk v. Board of Trustees, 654 F.2d 856, 858 (2d Cir.1981), cert. denied, 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982); Kaiser v. Cahn, 510 F.2d 282, 284 (2d Cir. 1974); Staples v. Avis Rent-A-Car System, Inc., 537 F.Supp. 1215, 1218 (W.D.N.Y. 1982); Marin v. New York State Department of Labor, 512 F.Supp. 353, 355 (S.D.N. Y.1981).
Thus, although defendants urge rejection of the three-year period of section 214(2) in favor of a much shorter limitations period, either the one-year period set forth in the New York Human Rights Law, N.Y. Exec.Law § 297 (McKinney 1982), or the four-month period applied in article 78 proceedings, N.Y.Civ.Prac.Law & R. § 217 (McKinney 1972), we are not persuaded that the longer period should be abandoned in a case brought under the Act. The Second Circuit has previously rejected the application of limitations periods any shorter than the three years specified by section 214(2), see, e.g., Taylor v. Mayone, 626 F.2d 247, 253 (2d Cir.1980); Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 449 (2d Cir.1980), and has specifically refused to apply section 217, noting that "[t]he brevity of [the three-month] period makes it singularly inappropriate for § 1983 actions." Pauk, supra, 654 F.2d at 863.[8] Faced with such overwhelming authority for the application of section 214(2), we hold that its three-year limitations period must be applied in this case.
Accordingly, since the complaint in this action was filed on February 2, 1982, the unlawful discrimination alleged by a particular plaintiff must have either occurred after February 2, 1979, or been the result of a continuing violation that either has never ended or, if it has ended, did not do so until after February 2, 1979. A continuing violation is one consisting of a series of discriminatory acts that violate the Act. In determining whether a continuing violation is involved, the most critical question is whether the plaintiffs have alleged a "present violation," that is one which has occurred, at least in part, during the limitations period.[9]United Airlines, Inc. v. Evans, *1177 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977). A complaint must allege a present, as well as an ongoing, violation of the civil rights laws; it is not enough to allege a present effect of a past discriminatory act. Id.
Keeping in mind these tests of timeliness and the earlier described tests of sufficiency of claims, the Court can now consider the remaining federal claims by reviewing the allegations of each defendant separately.

a. Edward Jordan

Plaintiff Jordan's claim must be dismissed as untimely. He alleges that he was wrongfully terminated by the Department on January 12, 1979, Amended Complaint ¶ 36, more than three years before this action was commenced. Furthermore, a wrongful termination does not by itself constitute an ongoing violation. See Olson v. Rembrandt Printing Co., 511 F.2d 1228, 1234 (8th Cir.1975). Although the termination may have been an illegal act, the resulting non-employment is merely a present, continuing effect not a present, continuing violation. See Ward v. Caulk, 650 F.2d 1144, 1147 (9th Cir.1981). Absent any allegation of a present violation, Jordan's claim must be, and is, dismissed.

b. Fannie Beckles

Plaintiff Beckles's claim also must be dismissed. Although she was terminated on or about January 7, 1980, Amended Complaint ¶ 44, which is within the three-year limitations period, Beckles has failed to allege facts sufficient to state a claim. Officially, she was terminated for misconduct, which included, inter alia, possession of contraband in a Department facility and possession and consumption of alcoholic beverages while on duty. Amended Complaint ¶ 46. Beckles, however, claims that the defendants' actions were racially motivated in that two other correction officers were not terminated for what she implies was similarly improper conduct. Id. at ¶¶ 48-50.
The problems with Beckles's claim are two-fold. First, because one of the two correction officers mentioned in the complaint is not identified as being racially different from Beckles, we are provided with no factual basis for making a finding of racial discrimination. Second, although the other correction officer is identified as white, we are not told whether the disciplinary action taken against that officer was contemporaneous with the disciplinary action against Beckles, or whether it took place in the same or a comparable facility. Nor has the name of either officer been provided.
Such a lack of specificity in a complaint is more than the Court can tolerate. The complaint neither adequately notifies the defendants of the specific acts with which they are charged nor enables the Court to determine the merit of Beckles's general claim of racial discrimination. Accordingly, her claim is dismissed with leave to replead.

c. Williams Arrington, Elmer Owens, and Clarence Rivers[10]
Plaintiffs Arrington, Owens, and Rivers fail to allege facts sufficient to enable the Court to determine whether their claims are timely. Appointed as correction officers in 1976, all three of these plaintiffs received "unsatisfactory" performance ratings in 1978. Amended Complaint ¶ 23. The three now assert that those ratings were racially motivated and have since caused the plaintiffs to be denied pay increases and promotions that they otherwise would have received. Not surprisingly, the defendants argue that the claims of Arrington, Owens, and Rivers are time barred, noting that the alleged original discriminatory acts occurred more than three years before the commencement of this action.
Unquestionably, the 1978 acts by themselves cannot form the basis of a timely claim. The question raised, therefore, is whether those acts are part of a continuing *1178 or ongoing violation that occurred, at least in part, after February 2, 1979. In this vein, courts in certain instances have viewed a failure to promote as an ongoing violation. Clark v. Olinkraft, Inc., 556 F.2d 1219, 1222 (5th Cir.1977), cert. denied, 434 U.S. 1069, 98 S.Ct. 1251, 55 L.Ed.2d 772 (1978); Moore v. Sunbeam Corp., 459 F.2d 811, 828 (7th Cir.1972). Arrington, Owens, and Rivers, however, have not set forth enough information for the Court to determine whether they have alleged such a violation. As was mentioned earlier, to state a continuing violation, the complaint must indicate that the discrimination, as well as the injury, has occurred within the limitations period. See Goldman v. Sears, Roebuck & Co., 607 F.2d 1014, 1018 (1st Cir.), cert. denied, 445 U.S. 929, 100 S.Ct. 1317, 63 L.Ed.2d 762 (1979).
That portion of the complaint concerning these three plaintiffs does not do this. It merely indicates that they continue to suffer the effects of the allegedly discriminatory ratings that they received in 1978. They do not allege that they were subsequently in line for promotions or that they sought promotions. They do not allege that white correction officers with similar credentials have received a disproportionately greater number of promotions. Nor have they indicated whether they have received subsequent performance ratings and what effect these have had on their careers. In the absence of such allegations, we are faced with mere conclusions and general assertions, which are insufficient to support a claim that the defendants violated sections 1981 and 1983. See, e.g., Martin v. New York State Department of Mental Hygiene, 588 F.2d 371, 372 (2d Cir.1978). Consequently, the defendants' motion to dismiss with regard to plaintiffs Arrington, Owens, and Rivers is granted, with leave to replead.

d. Emanual Richards, Jr.

As to Richards, the Court is persuaded that his claims are sufficient to withstand a motion to dismiss. Although hardly a model of clarity and particularity, the amended complaint does contain specific factual allegations of discriminatory acts by the defendants against Richards.
In particular, Richards alleges: that the Department issued a Notice of Discipline-Dismissal from Service, dated June 28, 1979, charging him with insubordination; that he filed a complaint with the Equal Employment Opportunity Commission ("EEOC") in response; and that the EEOC subsequently determined that there was probable cause to believe that the defendants had engaged in unlawful retaliatory discrimination against him. Amended Complaint ¶ 20. Although these allegations could be more specific and complete, they are sufficient to state a claim by raising the strong possibility that Richards was indeed discriminated against in the way he was disciplined. Also, it is clear that the events in question occurred well within the statutory period.[11] Hence, the motion to dismiss Richards's claim must be denied.

e. Bennie McCall

The claims of plaintiff McCall are also sufficient to state a claim. He alleges that the Department illegally terminated him as a correction officer on April 4, 1979, just within the limitations period. He also asserts that, although he was discharged for excessive tardiness, white officers with similar attendance records were treated less harshly. He concludes that his termination was based not on his performance but rather on race. These factual allegations, taken together, are sufficient to withstand the defendants' motion to dismiss.

5. Standing of Plaintiff MCOA

The defendants challenge the standing of MCOA as a plaintiff in this action. MCOA claims that it has standing to sue both in its individual capacity and as a representative of its members. The defendants counter *1179 that MCOA has no standing in either capacity. We find ourselves in only partial agreement with the defendants' challenge.
At the outset, it should be noted that an association may have standing to sue either on its own behalf or as the representative of its members. Hunt v. Washington Apple Advertising Commission, 432 U.S. 333, 342, 97 S.Ct. 2434, 2440, 53 L.Ed.2d 383 (1977); Warth v. Seldin, 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975). Moreover, in the latter capacity an association may be able to sue even though it has not itself been injured. Warth, supra, 422 U.S. at 511, 95 S.Ct. at 2211.
Here, MCOA, a voluntary organization of black and Hispanic correction officers employed by the Department, claims that it may sue on its own behalf because it has suffered reductions in its financial support through the loss of dues from its members, resulting from the alleged unlawful employment practices of the defendants. MCOA further alleges that this direct loss has impeded its ability to function as an organization. Such allegations are sufficient, we believe, to establish an association's individual standing. See Vulcan Society of Westchester County v. Fire Department, 82 F.R.D. 379, 391 (S.D.N.Y.1979); Albany Welfare Rights Organization v. Wyman, 493 F.2d 1319, 1322 (2d Cir.), cert. denied, 419 U.S. 838, 95 S.Ct. 66, 42 L.Ed.2d 64 (1974). We conclude, therefore, that MCOA does have standing to sue on its own behalf.
We cannot reach the same conclusion with regard to its claim of representational standing, however. Whether an association has standing to sue on behalf of its members depends at least in part on the nature of the relief sought. Warth, supra, 422 U.S. at 511, 95 S.Ct. at 2211.[12] In the instant case, MCOA seeks damages, as well as declaratory and injunctive relief. In cases where declaratory and injunctive relief are sought, courts have consistently held that an association has standing to sue because the relief requested will inure to the benefit of each member actually injured. See, e.g., Common Cause v. Bolger, 512 F.Supp. 26, 30 (D.D.C.1980), aff'd, ___ U.S. ___, 103 S.Ct. 1888, 77 L.Ed.2d 280 (1983); Rhode Island Chapter, Associated General Contractors of America, Inc. v. Kreps, 450 F.Supp. 338, 346-47 n. 3 (D.R.I. 1978). However, if damages are sought on behalf of individual members, as is the case here, and not on behalf of the membership as a whole, then the relief requested differs for each member, and resolution of the case requires individual representation for each injured member. In such a case, the association in question does not have standing to sue on behalf of its members.[13]See National Collegiate Athletic Association v. Califano, 622 F.2d 1382, 1391-92 (10th Cir. 1980).
Therefore, although we conclude that MCOA has standing to sue on its own behalf, it does not have associational, or representational, standing.

*1180 6. Pendent Jurisdiction

The defendants' final challenge is that this Court lacks jurisdiction to hear the pendent state claims. Of course, with respect to those plaintiffs whose federal claims have been dismissed, this challenge is merited and their state claims must be dismissed as well. However, with respect to those plaintiffs whose federal claims have not been dismissed, the Court finds that the issue of pendent jurisdiction has not been adequately briefed. We have no choice, therefore, but to deny the defendants' motion in this regard, but with leave to resubmit it at a later time.

CONCLUSION
The defendants' motion to dismiss is granted in part and denied in part for the reasons stated above. The moving party will settle an order in conformance with this opinion.
SO ORDERED.
NOTES
[1] Nor do we find merit in the plaintiffs' contention that the Department may be properly maintained as a defendant even though it is immune from suit under the Civil Rights Act. No authority in support of this contention has been set forth by the plaintiffs and none has been found by the Court.
[2] This situation is to be distinguished from one in which an action is brought against a municipality or local government. Municipalities and local governments are considered "persons" within the meaning of section 1983 and may be sued for monetary, declaratory, or injunctive relief. See Monell v. Department of Social Services, 436 U.S. 658, 690 n. 54, 98 S.Ct. 2018, 2035 n. 54, 56 L.Ed.2d 611 (1978).
[3] Although the plaintiffs actually refer to Rule 4(d)(6), which provides for service "[u]pon a state or municipal corporation or other governmental organization ...," courts have determined that in an action against an individual in his official capacity, personal service pursuant to Rule 4(d)(1) is sufficient because recovery under the Civil Rights Act runs against the official himself in his private capacity and not against the government. See, e.g., United States ex rel. Wood v. Blacker, 335 F.Supp. 43, 44 (D.N.J.1971).
[4] The plaintiffs further assert that whatever service they did execute was sufficient because it met the minimal due process requirements enunciated in Mullane v. Central Hanover Trust Co., 339 U.S. 306, 314-315, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1949) (the purpose of service of process is to give defendants actual notice of the proceedings). In considering this argument, the Court acknowledges the general principle that Rule 4 should be liberally construed in the interest of justice. See 4 C. Wright & A. Miller, Federal Practice and Procedure § 1083 at 332 (1969). However, the Court also recognizes that there are limits to this principle and that it "cannot be utilized as a substitute for the plain legal requirement as to the manner in which service of process may be had." United States v. Mollenhauer Laboratories, Inc., 267 F.2d 260, 262 (7th Cir.1959), quoted in C. Wright & A. Miller, Federal Practice and Procedure § 1083 at 332 (1969). In this light, the plaintiffs' argument is of no avail since the attempt to serve the defendants personally by leaving the summons and complaint with the defendants' co-employees, who had no authority to accept such service, hardly complies with the spirit, let alone the letter, of Rule 4.
[5] Thus, for example, the Court concludes that it cannot dismiss with regard to particular defendants solely on the basis that the plaintiffs have failed to specify which act was committed by which defendant. It is simply too early in the litigation to dismiss on this ground; the plaintiffs have had no chance to conduct discovery and thereby determine which defendant is responsible for making or reviewing each of the allegedly discriminatory decisions that form the basis of the plaintiffs' claims. Construing the pleadings liberally, we are not prepared to say that there exists no set of circumstances under which a particular defendant could be found liable for at least one of the violations claimed by the plaintiffs.
[6] The sufficiency of plaintiffs' claims under sections 1981 and 1983 are considered later. See infra pp. 1175-1178.
[7] The amended complaint states in pertinent part that although "[t]he defendants were duly authorized to prevent or aid in preventing the denial of equal protection of the laws and Constitution of the United States to plaintiffs because of their race or color, the defendants, willfully acting or omitting to act in concert, wrongfully deprived plaintiffs of their rights to equal privileges and immunities of public employment as are secured to white persons." Amended Complaint ¶ 67.
[8] While it is true that New York State courts have opposed the automatic application of a single statute of limitations period to all claims under the Act, see, e.g., Staffen v. City of Rochester, 80 A.D.2d 16, 18-19, 437 N.Y.S.2d 821, 823 (4th Dep't 1981), it is also true that the determination of which statute of limitations should be applied to a federal claim is ultimately a matter of federal law. Pauk v. Board of Trustees, 654 F.2d 856, 865-66 (2d Cir.1981), cert. denied, 445 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982).

The courts of New York provide authoritative guidance on the proper construction of state statutes, including statutes of limitations. But determination of an appropriate state limitations period applicable to a federal cause of action is "a matter of federal law." UAW v. Hoosier Cardinal Corp., 383 U.S. 696, 705, 86 S.Ct. 1107, 1113, 16 L.Ed.2d 192 (1966). We would not be applying federal law if we automatically deferred to New York's view, whether expressed by its courts or its legislature, as to which limitations period the state thought was appropriate for a § 1983 claim.
Id.
[9] The limitations period does not commence until the final act or series of acts in a continuing violation has occurred. See Delaware State College v. Ricks, 449 U.S. 250, 256-58, 101 S.Ct. 498, 503-04, 66 L.Ed.2d 431 (1980).
[10] These three plaintiffs are considered as a group rather than individually, both because that is how they present their claims in the complaint and because all three plaintiffs assert the same type of discrimination in the way their performances were evaluated.
[11] Richards's other claim, however, which concerns a racial slur directed at him for alleged misconduct on or about January 11, 1978, is time barred by the three-year statute of limitations. See Amended Complaint ¶ 16.
[12] The Supreme Court has established that an association has standing to represent its members when (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. Warth v. Seldin, supra, 422 U.S. at 511, 95 S.Ct. at 2211; see also Hunt v. Washington Apple Advertising Commission, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977) (emphasis added).
[13] Although the Court has found one case in which associational standing was found even though the relief sought included damages, NAACP v. Detroit Police Officers Association, 525 F.Supp. 1215 (E.D.Mich.1981), the facts in that case differ significantly from those in the instant case. There, 1,100 officers were laid off over a very short period of time pursuant to a single policy of "last hired/first fired," which was expressed in the collective bargaining agreement between the employees' association and the municipal employer. Id. at 1217-18. Here, we are faced with allegations of a variety of discriminatory acts occurring in a variety of settings throughout New York State and at widely different times, which almost certainly have resulted in very different injuries to the different plaintiffs. Thus, even if we were to agree with the result in NAACP v. Detroit Police Officers Association, we would not be persuaded that its holding should be applied in this case.