**M.O.C.H.A. SOCIETY, INC., Michael Brown, and Otto Brewer, Plaintiffs,**

v.

**CITY OF BUFFALO, City of Buffalo Fire Department, Cornelius Keane, John D. Sixt, Buffalo Professional Firefighters Association, Inc., Local 282 AFL—CIO—CLC, and Ronald Cassel, Defendants.**

No. 98–CV–99C.

United States District Court, W.D. New York.

March 16, 2002.

Saperston & Day, P.C. (Thomas S. Gill and Michael C. Driscoll, of counsel), Buffalo, NY, for plaintiffs.

Michael B. Risman, Corporation Counsel of the City of Buffalo (Jeffrey Reed, Assistant Corporation Counsel, of counsel), Buffalo, NY, for defendants City of Buffalo,

City of Buffalo Fire Department, Cornelius Keane, John D. Sixt.

Schwan, Sammarco & Sammarco (Andrea Sammarco, of counsel), Buffalo, NY, for defendants Local 282, Ronald Cassell.

## INTRODUCTION

CURTIN, District Judge.

Plaintiffs Men of Color Helping All Society, Inc. ("MOCHA") and Michael Brown—as well as nineteen other individually named plaintiffs [1]—bring this employment discrimination action pursuant to various sections of the Civil Rights Act of 1964, including 42 U.S.C. §§ 1981, 1983, 1985(3), and §§ 2000e–2 and 2000e–5 (Title VII).[2] On the basis of these statutes, MOCHA and the individually named plaintiffs assert various discrimination claims against the City of Buffalo, the City of Buffalo Fire Department, Fire Commissioner Cornelius Keane, Deputy Fire Commissioner John Sixt, Buffalo Professional Firefighters Association, Inc., Local 282 ("the Union"), and Union President Ronald Cassell. The City, the Fire Department, Keane, and Sixt (collectively, "the City defendants" or "the City") now move to dismiss plaintiffs' Second Amended Complaints "A" and "B."[3] The court heard oral argument on the City defendants' motions on August 17, 2001, and has received and considered subsequent supplemental fil-

1. Michael Brown is named as an individual plaintiff in both Second Amended Complaint "A" (Item 55) and Second Amended Complaint "B" (Item 54). Besides Brown, Second Amended Complaint "A" names fifteen other firefighters who claim to be aggrieved by the Fire Department's allegedly discriminatory drug-testing policies, and Second Amended Complaint "B" names seven firefighters who claim to be aggrieved by the Fire Department's allegedly discriminatory promotions to the rank of lieutenant. Three of those seven individually named firefighters are also named in Second Amended Complaint "A."

2. Plaintiffs also assert pendent state law claims under New York State Human Rights Law.

3. By a prior order, the court directed plaintiffs to file separate amended complaints for the claims relating to the Fire Department's drug-testing program and to the Fire Department's promotions practices (Item 23).

ings. For the following reasons, the City's motions are granted in part and denied in part.

### BACKGROUND

In the amended pleadings, MOCHA describes its constituency and organizational purpose as follows:

> MOCHA ... is a *Not–for–Profit* corporation *organized and existing* under the laws of the State of New York. It is an organization of African American firefighters employed by the City of Buffalo Department of Fire and it is a member organization of the International Association of Black Professional Firefighters ("IABPFF").... MOCHA's organizational purpose is to promote understanding, friendship and cooperation among all members of the fire department of the City of Buffalo; to see that competent Blacks are recruited and employed as firefighters; [and] to encourage and aid in the advancement of Blacks to elevated ranks within the fire department....

(Item 55, ¶ 2.)

Plaintiffs make a number of allegations in support of their claims regarding the Fire Department's allegedly discriminatory enforcement of its drug-testing policy. Among other things, plaintiffs claim that nineteen of the twenty-one firefighters who have been terminated as a result of failure to abide by the drug abuse and testing policies have been Black (*see* Item 55, ¶ 63). In addition, plaintiffs allege that White firefighters receive superior out-patient drug treatment at the Beacon Center's Amherst offices and that the Fire Department treats White firefighters more leniently in terms of the disciplinary consequences of testing positive for drug use. By way of example, plaintiffs allege that the Fire Department has terminated one Black firefighter for a positive drug test while allowing a White firefighter to return to work for a substantially identical test result (*see* Item 66, p. 3).

MOCHA asserts standing to sue by virtue of the direct harm it suffers as a result of the City's discriminatory enforcement of its drug-testing program. Specifically, MOCHA claims that it loses members and membership dues each time the City fires a Black firefighter for failure to comply with the Fire Department's drug-testing policy, thereby frustrating MOCHA's corporate purposes (Item 55, ¶¶ 2, 68).

Plaintiffs' claims regarding the Fire Department's promotion practices—embodied in Second Amended Complaint "B"—relate to the way in which the Fire Department promotes firefighters to the rank of lieutenant (*see generally* Item 54). On this point, plaintiffs again make a number of specific allegations in support of their claims regarding the Fire Department's alleged discrimination. By way of example, plaintiffs allege that the Fire Department employs a subjective "points system" as the means of designating which firefighters are qualified to take the lieutenants' exam, and that this system is manipulated to favor Whites. Plaintiffs also claim that the Fire Department sponsors training sessions for the promotion exam and excludes Blacks from participating. Further, plaintiffs allege that Fire Department officials have actually released exam questions and subject areas to White firefighters in advance of the exam, but have not done the same for Blacks. Finally, plaintiffs point to statistical evidence indicating that the promotion exam is racially biased against Blacks (*see* Item 66, pp. 6–7).

As with the drug-testing policy, MOCHA claims that it is directly harmed by the Fire Department's discriminatory promotion practices in that promotion of mostly White firefighters to the rank of

lieutenant has caused it to lose membership and, consequently, the increased membership dues that would come with a member's lieutenant's salary (*see* Item 54, ¶ 43; *see also* Item 64, ¶¶ 10, 13, 14).

The City moves pursuant to Fed. R.Civ.P. 12(b) to dismiss both amended complaints "A" and "B" on the following grounds:

1. Lack of standing to sue;

2. Failure to state a claim for which relief can be granted;

3. Unavailability of punitive damages against a municipality;

4. Failure to state a Title VII claim against defendants Keane and Sixt in their individual capacities; and

5. Failure to state a claim against the Fire Department as a separate entity.

Each of these grounds is discussed in turn.

### DISCUSSION

### I. Standing

 Whether a plaintiff has sufficiently alleged standing to sue presents a question of justiciability—*i.e.,* "whether [a] plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The court's jurisdiction therefore can only be invoked when a plaintiff has suffered "some threatened or actual injury resulting from the putatively illegal action...." *Linda R.S. v. Richard D.,* 410 U.S. 614, 617, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973), *quoted in Warth,* 422 U.S. at 499, 95 S.Ct. 2197.

In *United States v. Vazquez,* 145 F.3d 74 (2d Cir.1998), the Second Circuit provided a comprehensive summary of the standing requirements:

[T]he party invoking federal jurisdiction bears the burden of establishing the elements of standing. To meet this burden, a plaintiff must show (1) that she suffered an injury in fact—an invasion of a legally protected interest that is concrete and particular, and not merely hypothetical; (2) that there is a causal connection between the injury and the conduct complained of; and (3) that it is likely that the injury will be redressed by a favorable decision....

We have emphasized that the fundamental aspect of standing is its focus on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated. The aim is to determine whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf. The standing issue must therefore be resolved irrespective of the merits of the substantive claims.

*Vazquez,* 145 F.3d at 80–81 (internal quotation marks and citations omitted).

 When standing is challenged at the pleading stage, the court must "accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth,* 422 U.S. at 501, 95 S.Ct. 2197. Moreover, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal quotation omitted); *see also Vazquez,* 145 F.3d at 81.

There are two ways in which a plaintiff association may satisfy the standing requirement. First, an association has standing "in its own right to seek judicial relief from injury to itself . . .," *Warth*, 422 U.S. at 511, 95 S.Ct. 2197, and in so doing may "assert the rights of its members, at least so long as the challenged infractions adversely affect its members' associational ties." *Id.* Alternatively, "[e]ven in the absence of injury to itself, an association may have standing solely as the representative of its members." *Id.* at 511, 95 S.Ct. 2197.

### A. Injury to MOCHA

The City defendants argue that MOCHA does not allege any injury to itself in the promotions complaint (Complaint "B"), but instead merely pleads that it is a representative of its members. The City defendants curiously offer *no* argument as to whether MOCHA has standing on its own behalf to challenge the drug-testing policy. However, the court will presume that the City would seek to make substantially similar arguments in support of both motions—*i.e.*, that MOCHA has failed to adequately allege an injury to itself and therefore has no standing to sue on its own behalf to challenge either the promotion policy or the drug-testing policy.

Having made the presumption, the court rejects the City's argument. In the drug-testing policy complaint (Complaint "A"), MOCHA claims that the City defendants' discriminatory application of the Fire Department's drug-testing policy has harmed and frustrated MOCHA's organizational purpose, and that each allegedly discriminatory termination of a Black firefighter reduces MOCHA's membership and its membership dues.[4] Likewise, in Com-

plaint "B," MOCHA claims that the City defendants' discriminatory promotion practices have harmed and frustrated MOCHA's organizational purpose and that the wrongful denial of promotions to Black firefighters has the effect of reducing MOCHA's membership dues.

In *Richards v. New York State Dep't of Correctional Services*, 572 F.Supp. 1168 (S.D.N.Y.1983), the plaintiff association Minority Correction Officers Association ("MCOA") was a voluntary organization of Black and Hispanic correction officers who were employed by the defendant New York State Department of Corrections. MCOA argued that it had standing to sue on its own behalf because it had "suffered reductions in its financial support through the loss of dues from its members, resulting from the alleged unlawful employment practices of the defendants," and "that this direct loss . . . impeded its ability to function as an organization." *Id.* at 1179. The district court agreed, finding these allegations "sufficient . . . to establish an association's individual standing." *Id.*

Similarly, in *National Association for the Advancement of Colored People v. Detroit Police Officers Ass'n*, 525 F.Supp. 1215 (E.D.Mich.1981), the district court found that a voluntary association of Black police officers had standing to sue on its own behalf. The court determined that the association had standing by virtue of the fact that "it alleged that it has suffered diminished financial support and loss of membership as a result of the challenged layoffs." *Id.* at 1219.

MOCHA's claims of injury, accepted as true for the purposes of deciding this motion to dismiss, mirror the claims made by the plaintiff associations in *Richards* and

---

4. It must also be borne in mind that part of MOCHA's corporate purpose is "to see that competent Blacks are recruited and employed as firefighters" and "to encourage and aid in the advancement of Blacks to elevated ranks within the fire department" (Item 55, ¶ 2).

*NAACP v. Detroit.* Accordingly, MOCHA has sufficiently alleged injury in fact, a causal connection between the injury and the conduct complained of, and likelihood of redress to confer standing to sue on its own behalf.

### B. Associational Standing

█ The City also argues that MOCHA lacks standing to sue as an association. This argument is likewise rejected.

As stated by the Supreme Court:

[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). The City defendants do not dispute that MOCHA satisfies the first prong of the *Hunt* test. Furthermore, given the allegation that MOCHA's corporate purpose requires it to "see that competent Blacks are recruited and employed as firefighters" and also requires it to "encourage and aid in the advancement of Blacks to elevated ranks within the fire department," the City defendants cannot seriously dispute that MO-CHA satisfies the *Hunt* test's second prong.[5]

The only *Hunt* prong that is seriously contested is the third—*i.e.,* whether the claim asserted *or* the relief requested will require the participation of the association's individual members in the lawsuit.

Here, the City defendants rely principally on *C.A.U.T.I.O.N., Ltd. v. City of New York,* 898 F.Supp. 1065 (S.D.N.Y.1995), and *Rent Stabilization Ass'n v. Dinkins,* 5 F.3d 591 (2d Cir.1993).

In *C.A.U.T.I.O.N.,* the Contractors Against Unfair Taxation Instituted on New Yorkers ("CAUTION") commenced an action against the City of New York asserting that the City had violated its members' constitutional due process rights by issuing them unwarranted and arbitrary parking tickets and by then failing to provide a meaningful system of administrative appeal. The district court found that CAUTION lacked associational standing, because proper adjudication of the claim would require the individual members to participate in the action. According to the court:

Plaintiffs allege that City officials have a policy or practice that violates the Fourteenth Amendment. . . . Proof of the existence of a policy or practice will require proof of more than one instance of official misconduct consistent with the policy or practice. Only the individual members of CAUTION will be able to show individual instances of misconduct here, and they therefore will have to participate in the suit.

*C.A.U.T.I.O.N.,* 898 F.Supp. at 1069–70 (citations omitted).

In *Rent Stabilization Ass'n v. Dinkins,* the plaintiff was an association with a voluntary membership of over 25,000 owners of buildings located throughout New York City. The association brought suit against the Mayor and other City officials seeking declaratory and injunctive relief from the effect of the City's rent stabilization laws.

---

**5.** Despite MOCHA's clear recitation of corporate purpose at paragraph two of its tandem complaints, the City defendants inexplicably suggest in their supporting memoranda that it is impossible to assess *Hunt*'s second prong relative to MOCHA, since MOCHA failed to allege an organizational purpose in its complaints (*see* Item 59, p. 5; Item 61, p. 4).

The plaintiff alleged that the rules and policies which governed "hardship adjustments" violated the Takings Clause of the Fifth Amendment and deprived association members of substantive due process.

The Second Circuit found that the plaintiff lacked associational standing to sue on behalf of its members. While acknowledging that the relief requested would inure to the benefit of the members, the court observed that "the relief sought is only half of the story." *Rent Stabilization Ass'n*, 5 F.3d at 596. The court elaborated on this point by explaining as follows:

The *Hunt* test is not satisfied unless *"neither the claim asserted* nor the relief requested requires the participation of individual members in the lawsuit." Therefore, we also must examine the claims asserted to determine whether they require individual participation.

The [association] claims that some of its members have been the victims of a taking.... [Given the nature of a "takings" analysis, the court] would have to engage in an *ad hoc* factual inquiry for *each* landlord who alleges that he has suffered a taking. We would have to determine the landlord's particular return based on a host of individualized financial data.... Finally, with respect to the [association]'s charge that the law is administered unconstitutionally, we would have to examine the details of each particular instance of poor administration.

*Id.* (citations omitted; emphasis supplied). In short, the court found that resolution of the plaintiff's takings claims would require extensive participation from individual members of the association. In light of the potential problems with securing such proof where the association was the named plaintiff, the court found that the association lacked standing under *Hunt. Id.* at 596–98.

MOCHA rejects the City's reliance on *Hunt's* third prong. MOCHA points out that, in *United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996), the Supreme Court ruled that the *Hunt* test's third prong is prudential—not constitutional—in nature: "Hence the third prong of the associational standing test is best seen as focusing on ... matters of administrative convenience and efficiency, not on elements of a case or controversy within the meaning of the Constitution." *Id.* at 557, 116 S.Ct. 1529.

In keeping with *Brown Group*, MOCHA cites a number of cases for the proposition that associational standing exists where the association requests declaratory or injunctive relief on behalf of its members, even though the participation of individual members is needed to prove the association's claims. First, MOCHA relies on *International Union, United Automobile, Aerospace and Agricultural Implement Workers of America v. Brock*, 477 U.S. 274, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1986), in which the Supreme Court held that the UAW had standing to challenge the Secretary of Labor's interpretation of the Trade Act's trade readjustment allowance eligibility provisions, without joinder of the aggrieved individual union members. However, the holding in *Brock* is not particularly persuasive, since the plaintiff's claims in that case are not directly on point with MOCHA's claims here. In *Brock*, the Court observed that "[n]either [the UAW's] claims nor the relief sought required the District Court to consider the individual circumstances of any aggrieved UAW member. The suit raises a pure question of law: whether the Secretary properly interpreted the Trade Act's [trade readjustment allowance] eligibility provisions." *Id.* at 287, 106 S.Ct. 2523.

Here, MOCHA's claims for declaratory and injunctive relief place in issue facts pertaining to the City's implementation of its drug-testing and promotion policies, and hence *will* require consideration of "the individual circumstances of ... aggrieved [MOCHA] members." *Id.*

MOCHA also cites *Guckenberger v. Boston Univ.*, 957 F.Supp. 306 (D.Mass.1997). However, like *Brock*, the plaintiff association's claims in *Guckenberger* principally raised a question of law. "[T]he primary forms of relief sought—injunctive and declaratory relief against [Boston University's] implementation of its new [disability] accommodations policy—do not require the individual participation of [the plaintiff association's] members." *Id.* at 321. As with *Brock*, that is not the case here.

■ Notwithstanding the distinctions between this case and cases like *Brock* and *Guckenberger*, the court finds that MOCHA can meet the third prong of *Hunt's* test for associational standing. As emphasized in *Brown Group*, *Hunt's* third prong is prudential rather than constitutional in nature. *Brown Group*, 517 U.S. at 557–58, 116 S.Ct. 1529. Judgments as to prudential standing are vested in the trial court's sound discretion since they involve "judicially self-imposed limit[s] on the exercise of federal jurisdiction, not a constitutional mandate." *Id.* at 557, 116 S.Ct. 1529 (internal quotation marks and citation omitted).

Stated simply, this court does not share the concerns expressed in cases like

*C.A.U.T.I.O.N.* and *Rent Stabilization* with respect to the necessity for the participation of individual association members. In this case, the plaintiff association, MOCHA, is comprised of more than 130 Black firefighters. There are also, at this point, twenty individually named plaintiffs in the two amended complaints. A great many of these individually named plaintiffs have already submitted affidavits supporting their claims as well as MOCHA's claims (*see, e.g.,* Items 47 and 48). Thus, it is reasonable to presume that a good number of these members of MOCHA will provide the essential testimony regarding MOCHA's claims for declaratory and injunctive relief. For these reasons, the court finds no problem with MOCHA's associational standing under the *Hunt* test's third prong.[6]

In this way, the court's decision resembles the discretionary determination made by Judge Fogel in *Rodriguez v. California Highway Patrol*, 89 F.Supp.2d 1131 (N.D.Cal.2000). There, the court acknowledged that the plaintiff associations' claims could not be adjudicated without the participation of individual members of the plaintiff associations. Nevertheless, the court found that the associations had standing to sue under *Hunt*, reasoning that, "at this early stage of the proceedings, it would appear to be sufficient that the individual plaintiffs are members of the racial and ethnic groups for whom the organizational plaintiffs state that they are

---

**6.** At oral argument, the City also suggested that MOCHA lacks standing to sue on its own behalf under Complaint "B" because the complaint illogically alleges that terminations resulted from the City's allegedly discriminatory promotion practices (*see* Item 54, ¶ 2). While the allegation of termination is indeed misplaced, as it appears in Complaint "B" (addressed to promotions), the City's argument on this point is unavailing. Taken as a whole, Complaint "B" stands for two allegations: (1) that the City administers the promotion exam in a discriminatory fashion, and (2) that the exam itself has an impermissible disparate impact on Blacks. If plaintiffs succeed in proving these allegations, then they will necessarily demonstrate that the City's illegal promotion practices and policies have exacted economic harm on MOCHA as an organization.

advocates." *Rodriguez,* 89 F.Supp.2d at 1136.

Accordingly, although the court's finding that MOCHA has standing to sue on its own behalf renders the foregoing inquiry largely academic, I find that MOCHA may also claim associational standing to assert claims for declaratory and injunctive relief on behalf of its members.

## C. Alleged Waiver of Right to Challenge Drug Test Policy

 The City defendants also argue that neither MOCHA nor any individual member has standing to challenge the constitutionality of the drug-testing policy because it was negotiated and agreed to as the result of collective bargaining between the City and the Union (*see* Item 59, p. 10). In its supporting brief, the City cites *Dykes v. Southeastern Pennsylvania Transp. Auth.,* 68 F.3d 1564 (3d Cir.1995), *cert. denied,* 517 U.S. 1142, 116 S.Ct. 1434, 134 L.Ed.2d 556 (1996), and at oral argument cited this court's recent opinion in *Ware v. City of Buffalo,* 186 F.Supp.2d 324 (W.D.N.Y.2001). In *Dykes,* the Third Circuit reiterated the following principle that, "even where a drug testing policy has been held to be constitutionally infirm, a public employee may not pursue a civil rights suit based upon that infirmity where his union and his employer agree to operate under that policy." *Dykes,* 68 F.3d at 1570. In *Ware,* this court acknowledged the authority of *Dykes* and the Third Circuit's related decision in *Bolden v. SEPTA,* 953 F.2d 807 (3d Cir.1991) (*see* 98–CV–147, Item 30, pp. 21–22).

However, neither *Dykes* nor *Ware* is on point with this case. Both of those cases involved facial challenges to the respective drug-testing program at issue. Plaintiffs here do not challenge the constitutionality of the Fire Department's drug-testing policy *on its face.* Rather, plaintiffs challenge what they believe to be the City's discriminatory enforcement of a race-neutral drug-testing policy. As such, this case involves an "as applied" challenge to the drug-testing program, and the holdings in *Dykes* and *Ware* present no obstacle to plaintiffs. Accordingly, I find no merit to the City's argument that plaintiffs are foreclosed from challenging the drug-testing policy, as applied, by virtue of collective bargaining between the City and Local 282.

## II. Failure to State a Claim

At oral argument, counsel for the City asserted the position that Complaint "A" fails to state a claim for relief under 42 U.S.C. §§ 1981, 1983, 1985(3), and 2000e, *et seq.* (Title VII). However, the City did not address these specific issues in its supporting memorandum of law (Item 59), and counsel only briefly alluded to these arguments during oral argument. Further, it was not made clear whether the City also contends that Complaint "B" is similarly deficient.

Nevertheless, the court has reviewed the allegations contained in Complaint "A" and Complaint "B" and finds that plaintiffs have sufficiently stated claims upon which relief can be granted under §§ 1981, 1983 and Title VII. As to § 1985, however, plaintiffs have failed to allege the existence of a conspiracy. Therefore, that aspect of their complaint is subject to dismissal.

 In order to state a claim under § 1981, plaintiffs must allege (1) that plaintiff is a member of a racial minority, (2) an intent to discriminate on the basis of race by the defendant, and (3) that the discrimination concerned one or more of the activities enumerated in the statute (*i.e.,* make and enforce contracts, sue and be sued, give evidence, etc.). *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 7 F.3d 1085, 1087 (2d Cir.1993). The allegations set

forth in Complaint "A" fully satisfy each of these three elements (see, e.g., Item 55, ¶¶ 4, 36, 64, 78–79). Similarly, the allegations set forth in Complaint "B" are sufficient to state a claim under § 1981 (see, e.g., Item 54, ¶¶ 3–4, 32–34, 54).

 With respect to their § 1983 claims, plaintiffs contend that defendants have deprived them of their constitutional right to equal protection of the law under the Fourteenth Amendment. To establish a § 1983 claim based on a violation of the Equal Protection Clause, a plaintiff must prove (1) selective treatment, compared with others similarly situated, and (2) that the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race, to punish or inhibit the exercise of constitutional rights. Knighton v. City of Syracuse Fire Dept., 145 F.Supp.2d 217, 222–23 (N.D.N.Y.2001). The same allegations in Complaints "A" and "B" that support plaintiffs' § 1981 claims also support their § 1983 claims. Both complaints are replete with allegations that the City subjected plaintiffs to adverse selective treatment on the basis of their race. The court is satisfied that plaintiffs—in both complaints—have sufficiently alleged that defendants have intentionally violated their rights under the Fourteenth Amendment's Equal Protection Clause.

 In order to state a claim under Title VII, plaintiffs must allege (1) that they are members of a protected class, (2) satisfactory job performance, (3) that they were subjected to adverse employment actions, and (4) that these actions were taken under circumstances giving rise to an inference of discrimination. See, e.g., Farias v. Instructional Systems, Inc., 259 F.3d 91, 99 (2d Cir.2001). As noted above in connection with plaintiffs' § 1983 claims, both Complaints "A" and "B" contain extensive allegations regarding the Fire Department's discriminatory drug-testing program and promotion practices and policies. Based on these allegations, it cannot be said to be "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (quoted in Lee v. Bankers Trust Co., 166 F.3d 540, 543 (2d Cir.1999)).

 Finally, in order to state a claim for conspiracy under 42 U.S.C. § 1985(3), a plaintiff must allege (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, (3) an overt act in furtherance of the conspiracy, and (4) a deprivation of a plaintiff's right as a citizen of the United States. See Thomas v. Roach, 165 F.3d 137, 146 (2d Cir.1999). However, a "complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." Sommer v. Dixon, 709 F.2d 173, 175 (2d Cir.), cert. denied, 464 U.S. 857, 104 S.Ct. 177, 78 L.Ed.2d 158 (1983).

 Plaintiffs have not sufficiently pleaded the existence of conspiracy as part of their § 1985(3) claims. Both Complaints "A" and "B" recite a litany of discriminatory actions and then seek to implicate all of the named defendants by referring to them collectively in connection with certain allegations of discriminatory conduct (see, e.g., Item 55, ¶¶ 41, 54; Item 54, ¶¶ 35, 38–39). In essence, as support for their conspiracy claim, plaintiffs rely on a series of alleged discriminatory actions, and on the fact that there are several named defendants in each complaint (see, e.g., Item 55, ¶¶ 64, 80; Item 54, ¶¶ 32–39, 56). This alone is not enough to satisfy the requirement under § 1985(3) that the plaintiff allege the exis-

tence of a *conspiracy* to deprive them of their constitutional rights. In order to claim the existence of a conspiracy, plaintiffs must allege facts indicating the existence of an agreement between some or all of the defendants to deprive them of their constitutional rights, and must also allege facts showing that the conspirators engaged in overt acts in furtherance of their agreement. *See generally Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir.1999). As indicated above, Complaints "A" and "B" are devoid of such allegations. Accordingly, plaintiffs' claims under § 1985(3) cannot survive the City's motions to dismiss.

### III. Punitive Damages

In the *ad damnum* clause, plaintiffs request an award of punitive damages (*see, e.g.*, Item 55, pp. 30–31). The City defendants argue that punitive damages are not available against any of the City defendants. As for individual defendants Keane and Sixt, the City argues that they are immune from punitive damages to the extent that they are sued in their official capacities. The City is correct. Municipalities and municipal officials who are sued in their official capacities are immune from punitive damages under the civil rights laws. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); *Deepwells Estates Inc. v. Incorporated Village of Head of Harbor*, 973 F.Supp. 338, 351 (E.D.N.Y.1997), *appeal dismissed*, 162 F.3d 1147 (2d Cir.1998); *Walters v. City of Atlanta*, 803 F.2d 1135, 1148 (11th Cir. 1986).

Accordingly, the City's motions are granted to the extent they seek dismissal of plaintiffs' claims for punitive damages against the City and the individual City defendants sued in their official capacities.

### IV. Individual Liability Under Title VII

The City also moves to dismiss plaintiffs' Title VII claims against individual defendants Keane and Sixt. As established by the Second Circuit in *Tomka v. Seiler*, 66 F.3d 1295 (2d Cir.1995), Title VII provides statutory remedies for employment discrimination by employers, not by individuals. *Id.* at 1313–17; *see also Evans v. The Port Authority of New York and New Jersey*, 2002 WL 77074, at *1 (S.D.N.Y. January 22, 2002) (individual superiors and co-workers not subject to Title VII liability because Title VII is limited to "employers"). Accordingly, the City's motions are granted to the extent they seek dismissal of plaintiffs' Title VII claims brought against individual City defendants Keane and Sixt.

### V. Claims Against Fire Department

Finally, the City defendants contend that the Fire Department, as an entity, is not susceptible to suit and must therefore be dismissed as a defendant. The City is correct. *See, e.g., Capozzi v. City of Olean*, 910 F.Supp. 900, 906–907 (W.D.N.Y.1995). Moreover, there is no need for the Fire Department to be named as a defendant in light of the fact that the City of Buffalo is named as a defendant. *See id.* Accordingly, the City's motions are granted to the extent they seek to dismiss the Fire Department as a defendant.

### CONCLUSION

For the foregoing reasons, the City defendants' motions (Items 58 and 60) to dismiss both of the Second Amended Complaints are granted in part and denied in part. The motions are granted to the extent that they seek dismissal of plaintiffs' claims under § 1985, plaintiffs' claims for punitive damages against the City and the individual City defendants sued in

their official capacities, plaintiffs' Title VII claims against individual City defendants Cornelius Keane and John Sixt, and plaintiffs' claims against the Fire Department as a separate entity. The motions are denied to the extent that they seek dismissal of the action for lack of standing, and to the extent that they seek dismissal of plaintiffs' claims under §§ 1981, 1983, and Title VII for failure to state a claim upon which relief can be granted.

Except as otherwise set forth in this order, plaintiffs' claims against the City defendants will survive the City's motions to dismiss.

A meeting is scheduled for Monday, April 22, 2002, at 11:30 a.m. to discuss further proceedings in the case.

So ordered.