Willis KNIGHTON, Plaintiff,

v.

CITY OF SYRACUSE FIRE DEPART-MENT and James L. Cummings, Individually and as Chief of the City of Syracuse Fire Department, Defendants.

No. 5:98–CV–920.

United States District Court,
N.D. New York.

May 15, 2001.

**220**

Law Office of George S. Mehallow (George S. Mehallow, of counsel), Syracuse, NY, for Plaintiff.

City of Syracuse Office of Corporation Counsel (Joseph R. Pacheco II, of counsel), Syracuse, NY, for Defendants.

## SUMMARY ORDER

SCULLIN, Chief Judge.

Plaintiff Willis Knighton asserts the following claims against the City of Syracuse Fire Department and James L. Cummings, the former Chief of the Fire Department: (1) violation of Plaintiff's Fifth and Fourteenth Amendment due process and equal protection rights pursuant to 42 U.S.C. § 1983;[1] (2) discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq;* and (3) state law claims for violation of Article 1, Sections 8 and 11 of the New York State Constitution.[2]

Presently before the Court is Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[3] The Court heard oral argument in support of, and in opposition to, that motion on April 27, 2001. At that

1. Plaintiff also made reference to the Fourth Amendment in his memorandum of law filed in opposition to the present motion. However, Plaintiff did not assert a Fourth Amendment claim in his Amended Complaint. Moreover, at oral argument, Plaintiff's counsel acknowledged that Plaintiff was not pursuing a Fourth Amendment claim.

 Additionally, in his Amended Complaint, Plaintiff refers to the Sixth Amendment. However, given the nature of this case, it is clear that there has been no Sixth Amendment violation.

2. Plaintiff, an African American male, was employed as a firefighter with Defendant City of Syracuse Fire Department from July 1985 to November 1996. Plaintiff also served as the Vice President and Affirmative Action Director of an organization known as the Firefighters of Color United in Syracuse ("FOCUS").

 On June 11, 1996, while off duty, Plaintiff was transported to a hospital. Defendant Cummings was informed of Plaintiff's hospitalization and requested that a drug test be administered. The test results were "positive" for cocaine use. *See* Affidavit of Joseph R. Pacheco II, sworn to Dec. 21, 2000 ("Pacheco Aff."), at Exh. A.

 Defendant Cummings and Plaintiff reached an agreement ("Settlement Agreement") whereby Plaintiff would be reinstated to his position as long as he entered a treatment program. *See id.* at Exh. B., ¶ 2. Pursuant to the terms of the agreement, Plaintiff would be subject to further disciplinary charges if he failed to continue receiving treatment "until such time as the counselor of [the] program indicate[d] to the Chief of Fire that [he] no longer need[ed] treatment." *See id.*

 On October 17, 1996, another drug test was administered to Plaintiff. Again, the test results were "positive" for cocaine use. *See id.* at Exh. C. Thereafter, Plaintiff was terminated from his employment.

3. Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is warranted if, when viewing the evidence submitted, including the pleadings, depositions, answers to interrogatories and affidavits, in the light most favorable to the non-moving party, the court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992); *Raskin v. Wyatt Co.,* 125 F.3d 55, 60 (2d Cir. 1997); *Commander Oil Corp. v. Advance Food Serv. Equip.,* 991 F.2d 49, 51 (2d Cir.1993). A genuine issue of fact exists when the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Rovtar v. Union Bank of Switz.,* 852 F.Supp. 180, 182 (S.D.N.Y.1994) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986)). Moreover, in determining whether such a fact question exists, the court must draw all reasonable inferences in favor of the non-moving party. *See Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir.1997).

time, the Court rendered a decision on all aspects of Defendants' motion and, for the reasons set forth on the record as well as those discussed below, the Court granted Defendants' motion for summary judgment.

## A. Due Process

█ "[T]o prevail on a due process claim, a plaintiff must identify a constitutionally protected liberty or property interest . . . ." *Schlesinger v. New York City Transit Auth.*, No. 00 CIV. 4759, 2001 WL 62868, *6 (S.D.N.Y. Jan. 24, 2001) (citation omitted). The plaintiff must then show that he has been deprived "of that interest without due process of law." *Id.* (citation omitted).

Plaintiff has not provided the Court with information sufficient to find that he maintained a liberty or property interest in his employment. Even assuming that Plaintiff had provided such information, the Court finds that Plaintiff is unable to satisfy the second prong of the analysis by showing that he was deprived of a liberty or property interest without due process of law.

█ Plaintiff contends that Defendants violated his due process rights when they administered drug tests pursuant to the Experimental Drug Policy. In particular, Plaintiff points to the fact that the Policy was not signed by the Local 280 Union or the City and, thus, contends that he did not have notice of the applicability of the Policy.[4]

Although Plaintiff argues that the Experimental Drug Policy was not in force because it was unsigned, he does not contend that the 1994–97 Collective Bargaining Agreement ("CBA") was not in force even though that document is also unsigned. Rather, Plaintiff relied upon the unsigned CBA when he grieved his termination through the arbitration clause of that agreement.[5] Moreover, during the arbitration proceeding, Local 280, which represented Plaintiff, never disputed the legality of the Experimental Drug Policy or its applicability to Plaintiff.[6] *See* Pachecho Aff. at Exh. F.

In addition, the 1994–97 CBA specifically addressed drug testing. It provides, in relevant part, the following:

> The parties have in practice an experimental drug testing agreement, a copy of which is attached as an Exhibit. The parties agree that this experimental drug testing agreement will continue and be in full force and effect through December 31, 1997.

*See* Pl's Response to Statement of Material Facts at Exh. B.

For reasons unknown to this Court, Local 280 and the City apparently have a history of not signing documents such as the CBA and the Experimental Drug Policy. However, as evidenced by the fact that Plaintiff was provided with an arbitration hearing pursuant to the terms of the CBA, it appears that Local 280 and the City have abided by the terms of these documents. Thus, the Court finds that it

---

**4.** The Experimental Drug Policy provides that "[i]t is understood that the City policy is that any officer who tests positive twice, without regard to the particular substance or substances involved, within any 24 consecutive month period will be terminated from his employment with the Department." *See* Pacheco Aff. at Exh. D.

**5.** The arbitrator found that the Fire Department had cause to terminate Plaintiff. *See* Pacheco Aff. at Exh. F.

**6.** During his deposition, William Hicks testified that "we adopted that in our union contract, the experimental drug policy." *See* Transcript of the Deposition of William Hicks, sworn to Sept. 28, 2000 ("Hicks Tr."), at 30.

was proper for Defendants to enforce the Experimental Drug Policy and that Plaintiff did have notice of that policy.

The Court further finds that even if Plaintiff was correct in claiming that the Experimental Drug Policy was not in force and that he had a right to notice of potential drug testing, Plaintiff still had adequate notice of the potential for testing. It is important to note that during his deposition, William Hicks, one of Plaintiff's co-workers and the former President of FOCUS, testified that "[b]efore we had our experimental policy there was a no tolerance position that the City had for substance abuse and [the] City dealt with it internally." *See* Hicks Tr. at 30. Hicks further testified that pursuant to this "no tolerance position," firefighters "would not be shown any leniency as far as drugs were concerned." *See id.* at 31. Moreover, during oral argument, Plaintiff's counsel represented that Plaintiff had actual knowledge of the Policy.

■■ It is also clear that Plaintiff's termination process occurred in accor-

dance with the applicable CBA, the Experimental Drug Policy and the Settlement Agreement.[7] Accordingly, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's due process claim.

## B. Equal Protection

■ As an initial matter, the Court finds that the Experimental Drug Policy is facially neutral. Nevertheless, "a neutral policy implemented in a discriminatory manner [ ] may violate equal protection." *Harmon v. Bratton*, No. 94 CV 3070, 1995 WL 405015, *5 (E.D.N.Y. June 29, 1995).

■■ To establish a claim for violation of the Equal Protection Clause, a plaintiff must prove that " '(1) the [plaintiff], compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race … to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith

---

7. It is also important to note that to succeed on a § 1983 claim against the Fire Department and Cummings in his official capacity, the plaintiff must allege (1) that the defendant deprived him of a right, privilege, or immunity guaranteed under the Constitution or federal statute and (2) that the defendant was acting under color of state law. *Charles W. v. Maul*, 214 F.3d 350, 357 (2d Cir.2000). Moreover, the plaintiff must allege that " 'the constitutional violation resulted from an identified policy, custom, or practice of the municipality.' " *Mackey v. Property Clerk of the N.Y. City, Police Dep't*, 26 F.Supp.2d 585, 590 (S.D.N.Y.1998) (quotation omitted).

Based on the record before the Court, it is clear that Plaintiff has not sufficiently alleged, nor has the Court found, the existence of a municipal policy or custom of violating due process rights.

In addition, to prevail on the claim against Cummings in his individual capacity, the

Court must find that qualified immunity does not apply. " 'The qualified immunity doctrine protects government officials from suits seeking to impose personal liability for money damages based on unsettled rights or on conduct that was not objectively unreasonable.' " *Tenenbaum v. Williams*, 193 F.3d 581, 595–96 (2d Cir.1999) (quoting *Connell v. Signoracci*, 153 F.3d 74, 79 (2d Cir.1998)). "A government actor performing a discretionary task is entitled to immunity from § 1983 suits if either '(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law.' " *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 250 (2d Cir.2001) (quotation and citation omitted).

Based on the record, the Court finds that it was objectively reasonable for Cummings to request the drug testing and to eventually terminate Plaintiff.

intent to injure the person[.]'" *Laverpool v. New York City Transit Auth.*, 835 F.Supp. 1440, 1459 (E.D.N.Y.1993) (internal quotation omitted); *see also Birmingham v. Ogden*, 70 F.Supp.2d 353, 371 (S.D.N.Y.1999). "Intent is an essential element of an equal protection claim, ..., and [a] plaintiff cannot prevail by showing only that the Department's drug testing policy has a disparate impact on African American officers[.]" *Harmon*, 1995 WL 405015, at *5 (citations and internal citation omitted); *see also Laverpool*, 835 F.Supp. at 1459.

 In support of his equal protection claim, Plaintiff contends that Defendants discipline African–American firefighters who test positive for drugs more severely than Caucasian firefighters and that Defendants fail to provide African–American firefighters with the same drug treatment options.

With respect to Plaintiff's claim that he was not provided with the same treatment options as Caucasian firefighters, it is clear that this assertion has no merit. The determination as to whether a firefighter is eligible for in-patient drug rehabilitation treatment is made by the insurance company that a firefighter selects as his or her medical insurance provider, not the Fire Department. In fact, during his deposition, Plaintiff was asked whether anyone had told him that he was "not allowed to go to an in-patient program[.]" *See* Transcript of the Deposition of Willis Knighton,

sworn to Mar. 21, 2000 ("Knighton Tr."), at 15. Plaintiff responded that he had "found out through the EAP Director that PHP doesn't have an in-patient program." *See id.* Plaintiff was then asked whether Cummings prevented or forbid him from going to in patient treatment. *See id.* Plaintiff responded "[n]o[,][t]he insurance did."[8] *See id.*

Plaintiff has also failed to come forward with sufficient evidence to establish an issue of material fact with respect to his claim that, as an African–American, the discipline that he received was different from that received by Caucasian firefighters. As discussed at oral argument, Plaintiff was the only firefighter that tested positive for drug use twice within a 24–month period. Although, in his memorandum of law, Plaintiff claimed that other firefighters were treated differently, based upon the parties' oral and written submissions, it is clear that none of these other individuals were similarly situated. Additionally, even if the Court found that Plaintiff had provided sufficient evidence to support his claim that African–American firefighters were treated differently, Plaintiff has provided no evidence that this disparate treatment was based upon Defendants' intent to discriminate on the basis of race.[9]

Accordingly, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's equal protection claim.

**8.** At oral argument, Plaintiff's counsel acknowledged that the insurance providers determined the treatment options.

**9.** As discussed in footnote 7, to maintain a claim against the Fire Department and Cummings in his official capacity, Plaintiff must allege a municipal custom, policy or practice. Again, the Court finds that Plaintiff has failed

to come forward with evidence sufficient to show that there was a municipal custom, policy or practice of violating individuals' equal protection rights.

Moreover, with respect to the claim against Cummings in his individual capacity, the Court, once again, finds that qualified immunity applies.

## C. Title VII

### 1. Disparate Treatment

■■■■■ To establish a prima facie case of discrimination, the plaintiff must show the following: (1) that he belongs to a protected class; (2) that he was qualified for the position; (3) that he was discharged; and (4) that the "discharge occurred 'in circumstances giving rise to an inference of racial discrimination.'" *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 464 (2d Cir.1989) (quotation and citations omitted). Once the plaintiff establishes a prima facie case, the "'burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the [discharge]."'" *Id.* (quoting *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) (quotation omitted)). If the defendant satisfies this burden, the plaintiff must then prove, "'by a preponderance of the evidence[,] that the legitimate reasons offered by the defendants were … a pretext for discrimination.'" *Id.* (quoting *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) (quotation omitted)).

Defendants concede that Plaintiff has established a prima facie case of disparate treatment. However, Defendants correctly assert that the two positive drug tests provided a legitimate non-discriminatory reason for terminating Plaintiff.

Again, Plaintiff contends that the drug testing was inappropriate because the Experimental Drug Policy was not signed and because Plaintiff was treated differently from other firefighters with respect to treatment options and discipline.

As discussed above and at oral argument, the Court finds these assertions to be unpersuasive and concludes that the two positive drug tests provided Defendants with a legitimate business reason to terminate Plaintiff.

■■■■ The Court also finds that Plaintiff has failed to establish, by a preponderance of the evidence, that the nondiscriminatory reason for Plaintiff's termination was merely a pretext for discrimination.[10] Accordingly, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's disparate treatment claim.

### 2. Disparate Impact

■■■■■ To establish a prima facie case of disparate impact, a plaintiff must identify "a specific employment practice which, although facially neutral, has had an adverse impact on [the plaintiff] as a member of a protected class." *Smith v. Xerox Corp.*, 196 F.3d 358, 364 (2d Cir.1999) (footnote and citation omitted). Then, the defendant has the "burden of producing evidence that its employment practice[ ][is] based on legitimate business reasons[.]"

---

**10.** In considering pretext, "[t]he ultimate question is whether the employer intentionally discriminated, and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason … is correct.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146–47, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting [*St. Mary's Honor Ctr.*, 509 U.S.] at 524, 113 S.Ct.

2742, 125 L.Ed.2d 407). "In other words, '[i]t is not enough … to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination.'" *Id.* at 147 (quoting [*St. Mary's Honor Ctr.*, 509 U.S.] at 519, 113 S.Ct. 2742, 125 L.Ed.2d 407). However, "it is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Id.*

*Watson v. Fort Worth Bank and Trust,* 487 U.S. 977, 998, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988). After the defendant has met this burden, the plaintiff must show that other tests or practices are available, " 'without a similarly undesirable racial effect, [and] would [ ] serve the employer's legitimate interest in efficient and trustworthy workmanship.' " [11] *Id.* (quotation omitted).

■■■ Plaintiff's disparate impact claim fails for several reasons. In particular, Plaintiff has not come forward with evidence to support his claim that the Experimental Drug Policy adversely impacts African Americans. Moreover, as discussed above, Defendants have established a legitimate business reason for Plaintiff's termination. Plaintiff has also failed to show that alternative tests or practices were available.[12] Accordingly, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's disparate impact claim.

### 3. Retaliation

■■■■ To establish a prima facie case of retaliation, an employee must show the following: (1) "that [he] was engaged in [a] protected activity;" (2) "that the employer was aware of that activity;" (3) "that [he] suffered adverse employment decisions; and" (4) "that there was a causal connection between the protected activity and the adverse employment action." *Manoharan v. Columbia Univ. College of Physicians & Surgeons,* 842 F.2d 590, 593 (2d Cir.1988) (citations omitted). Once the plaintiff has established a prima facie case, the burden "shifts to the employer to articulate some legitimate nondiscriminatory reason for the alleged acts of reprisal[.]" *Grant v. Bethlehem Steel Corp.,* 622 F.2d 43, 46 (2d Cir.1980). The burden then "returns to the plaintiff, who is given an opportunity to demonstrate that the employer's reasons are a mere pretext for discrimination taken in retaliation for participation in protected activities." *Id.*

Even assuming that Plaintiff has established a prima facie case of retaliation, his claim nevertheless fails.[13] As discussed above, Defendants have satisfied their burden to establish the existence of a legitimate nondiscriminatory reason for the termination. Moreover, Plaintiff has failed to show that the business reason for the termination was a mere pretext for discrimination. Accordingly, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's retaliation claim.

### D. State Law Claims

In light of the fact that the Court has granted Defendants' motions for summary judgment with respect to all of Plaintiff's

---

**11.** The Second Circuit has framed this prong as a requirement that the plaintiff "show that the employer's proffered explanation was merely a pretext for discrimination." *Smith,* 196 F.3d at 365 (citation omitted). "[I]f the plaintiff can show that another practice would achieve the same result at comparable cost without causing a disparate impact on the protected group, she has proven pretext." *Id.* (citation omitted).

**12.** It is also important to note that when asked about this claim at oral argument,

Plaintiff failed to provide the Court with any support for his assertion that summary judgment should not be granted on this claim.

**13.** Although it is somewhat unlikely that Plaintiff has established that there was a causal connection between the protected activity and the alleged adverse employment action, in the interest of brevity, the Court assumes, for purposes of this Order, that Plaintiff has established a prima facie case.

federal claims, it declines to exercise supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3). Accordingly, the Court dismisses these claims without prejudice.

In conclusion, after considering the file in this matter, the submissions and oral arguments of the parties, and the applicable law, and for the reasons stated at oral argument as well as those set forth herein, it is hereby

**ORDERED** that Defendants' motion for summary judgment with respect to Plaintiff's § 1983 and Title VII claims is **GRANTED** and those claims are dismissed with prejudice; and it is further

**ORDERED** that Defendants' motion for summary judgment with respect to Plaintiff's state law claims is **GRANTED** and those claims are dismissed without prejudice; and it is further

**ORDERED** that the Clerk of the Court enter **JUDGMENT** in favor of Defendants and close this case.

**IT IS SO ORDERED.**